Tilghman C. J.
(After stating the case.) In considering this case, it will be necessary to advert to several acts of assembly. By the decree of Tretiton, made by the commissioners appointed under the first'federal government, the dispute between Pennsylvania and Connecticut was decided in favour of Pennsylvania. The legislature of Pennsylvania, after this decree,.being desirous of confirming the estate of such Connecticut men as had actually settled and resided in the disputed territory before the controversy was decided, passed an act for that purpose, (known by th.e name of the confirming act,) on the 28th March, 1787. This act was repealed on the 24th April, 1790; after which it was decided by the Circuit Court of the United States, in the case of Van-home’s lessee v. Dorrance, (April Term, 1795,) that the state of Pennsylvania could not, consistently with the principles' of the constitution, take away any man’s land without making a just compensation. These things are necessary to be kept in mind, in order to obtain a true understanding of the acts of assembly which I am about to mention. The claimants both under Pennsylvania and Connecticut, being wearied with a state of things, in which neither derived much benefit from his claim, the.legislature formed a plan which was intended to reconcile the interests of both. It was proposed to confirm the titles of those persons who had settled under Connecticut, *445 prior to the decree' of Trenton, without violating the rights of the Pennsylvanians. This principle was the basis 'of the ’ act passed the 4th April, 1799, commonly called, “ The Com“pensation Act.” By this act those Pennsylvania claimants whose titles had accrued prior to the decree of Trenton, were invited to release to the Commonwealth; and on so doing they were to receive compensation in a Certain mode prescribed by the .act. But this was left to the option of the Pennsylvania claimants: and the rights of such as did not choose to release, were expressly preserved. The legislature afterwards thought proper to give more extensive relief to the Connecticut claimants ; and by an act passed 6th April, 1802, sect.' 9. the commissioners were directed to survey, value, and certify to the Connecticut claimants, not merely such parts and portions of the lands claimed by them, as had been released to the Commonwealth by the Pennsylvania claimants, but the whole of each tract claimed by a Connecticut claimant, whether released or not, and if the Pennsylvania claimant should refuse or neglect to release to the Commonwealth under the provisions of the compensation act. on or before the 1st August, 1802, such Pennsylvania claimant should not thereafter be entitled to recover the land, in any Court of the Commonwealth, against the Connecticut claimant, in whose favour a certificate should be issued by the commissioners, or any person claiming under him,- but should be at liberty to institute a suit against the Commonwealth, in which the Court and jury should have power to award a just; compensation for the land so taken from such Pennsylvania claimant: provided he should make it appear to the Court and jury, that he was fully, fairly, and exclusively entitled to such land under the Commonwealth, (except as against the person claiming the same, by virtue of a certificate or patent under the authority of that act;) and-the governor was directed to issue a warrant on.the treasurer for the amount of the sum given by the said Court and jury with costs of suit. Hitherto the legislature so far persevered in the original plan of the Compensation Act, that no relief was granted to any Connecticut claimant who had not been an *actual settler, prior to the decree of Trenton: nor was any Pennsylvania claimant authorised to release to the Commonwealth and demand compensation, unless his title had acervad prior to the said decree. But by a further supplement *446 to the compensation act, passed 9th April, 1807, the commis'sioners were directed, “ in examining the claims of the Con- “ necticut claimants, already submitted, or those which might “ be thereafter submitted, not to require the same lands to have “ ‘been occupied prior to. the decree of Trenton, but the same “ lands to the several applicants to certify, if, under the rules. “ agid regulations of the Susquehanna Company at any time, “they should otherwise thereto be entitled.” This threw those Pennsylvania claimants who had acquix-ed titles subsequent to the decree of Trenton, into an embarrassed situation. No law had been passed which' absolutely divested them of their rights. But they were debarred of their action against the Connecticut claimant: and the Commonwealth had not yet undertaken to make them compensation. Thus the matter remained till the. 3d March, 1812, when the Commonwealth, listening to the well grounded complaints of her citizens, the act was passed upon which this action is grounded. By this act it is provided, that “all Pennsylvania claimants-“having title under the Commonwealth on which a survey “had been made and returned prior to the 28th March, 1787, “and who have xxot x-eleased to" the Commonwealth, and" “ whose lands have been surveyed, valued, and certified to a- “ Connecticut claimant under the. 9th section of the act of 6th “ April, 1802, and of the act of 9th April, 1807, shall be at “ liberty to institute suits against the Commonwealth, on the “ trial -of which, the Court and jury shall have power to “ award a just compensation, without taking into view any “ improvement made thereon, for the land so taken from the “ Pennsylvania claimant, under, and subject to the same pro- “ visos, privileges, benefits, and advantages, and to be paid “ and satisfied in the same manner, as is prescribed by the' “ 9th section of the act of 6th April, 1802.” On the trial of this cause the plaintiff offered to give evidence of the value of the land,, for which compensation is demanded on the 1st March, 1812but this evidence was objected to by the counsel for the Commonwealth, and rejected by the Court. When the act of assembly authorises the Court and jury to award a just compensation, the obvious meaning is, compensation, considering the value .of the land at the time of making compen-s.ation. If my land is to be valued according to the usual price ten years ago, and in the mean time the usual price has risen 50 per cent, it is clear that to pay me accordingto- the- *447 price-ten year's -ago is making me but one-half -of compensation. The meaning of the act in question is rendered more" plain by the expression, “ without taking into view any im“provement made thereonthat is to. say, any improvement made at any time previous to the tiine of trial. All this appears so evident, that óne would wonder by what principle of construction this act can be made to bear a different meaning. Let us see what is said by the counsellor the Commonwealth, who has thought it his duty to urge every thing which ingenuity could suggest on the subject. He says, that the plaintiff’s land was taken axvay in January, 1804, when a certificate was issued for it to a Connecticut claimant, and therefore the compensation is to relate to the value at that time; and this he infers, because on a sale of land with warranty,¡ the value, in case of eviction, is to be estimated as it was at the time of making the warranty. I perceive no analogy between the cases. Warranty is a contract between the buyer and seller, and a certain construction has been fixed, to which it is supposed both parties consented. . In the case before us, there* was no contract. The Commonwealth exerted its preeminent power, to take from one man his property and give it to another; and at the same time made an engagement to-give just compensation. The words of the law are the words of the Commonwealth, and are to be construed liberally in favour of the person to whom the promise is made. Subtlety and refinement are commendable when exert/d in the promotion of justice, but I never will resort to them to work injustice. But it is now said, that the Pennsylvania claimant might have had compensation in 1804, when his land was certified to the Connecticut claimant. This is the first time of its being said so: for it is certain, that the law officers of the Commonwealth always spoke a different language : and the making of the act of 3d March, 1812, is a proof, that in the ©pinion of the legislature, no compensation could be had before. The act of 3d March, 1812, is founded on the presumption, that no action lay against the Commonwealth before : and therefore, for the purpose of ascertaining the intent of that act, it is fair to presume, that no action did .lie. NoW then, when the terms of the act are, that the Court and jury shall award a just compensation, what can be understood but that the compensation is to relate to the value at the time of awarding it ? If indeed the Pennsylvania claimant should' *448 delay his action until lands rose in value,' the Commonwealth ought not to lose by it: and in that case the value should relate to the time when compensation might have been .had, viz. the passing of the act. This was all which in. the present case the plaintiff demanded. He. offered evidence to prove the value on the 1st March, 1812. .This evidence, in my opinion, ought to have been received, and.the rejection of it was error. . > n
Another error is complained of in the charge of the Court. It was given in charge to the jury, that the plaintiff could not recover, because he had shewn no title to compensation. The opinion of the Court was, that the title of James Guest was completely divested by the act of- the commissioners in granting a certificate for this land in favour of a Connecticut claimant in 1804, from which time the interest of Guest became no more than a thing in action: a right to recover compensation from the Commonwealth, which in its nature was not assignable; and consequently, that the subsequent conveyances of the land under which the plaintiff claimed, were of no validity. I cannot assent to this-opinion. To deprive a man of his property without compensation would be an act of injustice, and a breach of the constitution. It was so decided in Vanhorne's lessee v. Dorrance, and the decision has never been contradicted. Now I will never attribute to the legislature of Pennsylvania, an act of injustice, and a breach of the constitution by implication; and it is certain, that the title of the Pennsylvania claimants was never divested expressly. It has been implied in the argument of this case; because his recovery by action against the Connecticut claimant was expressly taken away; and it may be asked, of what value was his title, when he was not permitted to recover upon it ? I answer, that it was of great value. For although the legislature might, from inadvertence, overlook his right for a season, yet there was a moral certainty, that, in the end, a law would be passed, either .permitting him to bring his action against the Connecticut claimant who held his land, or making just compensation out of the treasury of the Commonwealth. This has actually happened, and the justice of the Commonwealth preserved. It is unnecessaxy to multiply arguments in so plain a case. Yet I cannot pass over one circumstance which alone would afford convincing proof, that the title of the Pennsylvania claimant was not divested, The. *449 act of 7th March, 1812, gives a recovery of compensation subject to the provisoes contained in the 9th section of the act of 6th April, 1802. Now one of the provisions in that sec-'' tion is, that the Pennsylvania claimant 'who sues the Commonwealth shall, in the course of the trial, make it appear to the Court and jury, that he is fully, fairly, and exclusively entitled to the land under the Commonwealth, except as against the Connecticut claimant, who had received a certificate from the commissioners. Bui unless the title remained in the Pennsylvania claimant, it would be impossible for him to prove that he had title. ' If was therefore intended by the legislature, that the title should remain in him. I am of opinion, then, that the title remained in fames Guest, and was legally deduced from him to the plaintiff, whose title is not completely divested until he receives compensation. Consequently he is entitled to receive compensation.
The counsel for the Commonwealth made one point more, which though not made in the Court of Common Pleas,' and though not strictly available in this Court, yet may, not improperly, receive a decision here, to.obviate a difficulty which might occur on the second trial of this cause. The objection Is this: that the plaintiff’s declaration avers that he was seised in fee: on the 3d March, 1812, which is variant from the evidence, by which it was proved, that the plaintiff was not seised until the 18th December, 1812, when he received a conveyance from the heirs of Guest. There is nothing substantial in this objection. The day on which the plaintiff’s title accrued is not material, provided it was before the commencement of his action; and the evidence proved, that it was before the commencement of the action. Besides, the declaration avers, that the plaintiff had a right of action against the Commonwealth on the 2d March, 1812, and still hath the same right of action, and that he is fully, fairly, and exclusively entitled to the said land under the Commonwealth, and hath never released the same to the Commonwealth. These averments are sufficient to cover the gist of his own case, which consists of title at the time the action was brought.
My opinion-, on the whole is, that the judgment should be reversed, and a venire facias de novo be awarded.
Ybates J.
Both of the questions raised in this cause de *450 pend on the true construction of the act of assembly relative tó compensation to Pennsylvania claimants of certain lands within the seventeen townships in the county of Luzerne, passed 3d March, 1812. Was the plaintiff .competent to bring this suit ? And has he declared in such a manner as would, according to technical rules, entitle him to recover any kind of compensation ?
I shall take up the latter first. The declaration is in case: no sum certain having been demanded. It recites the substance of the several laws of 4th April, 1799, 6th April, 1802, 9th April, 1807, and 3d March, 1812, so far as they respect; Pennsylvania claimants ; a patent granted to Edward Lynch, dated 23d March, 1786, founded on a warrant dated 26th January, 17S5, whereon a survey had been executed and returned prior to 28th March, 1787, describing the boundaries thereof; and alleges, that the same became vested in the plaintiff by virtue of sundry good conveyances in fee; and that he is fully, fairly, and exclusively entitled to the land, except as to the certified Connecticut claimants. It further states, that the whole "o£ the said land lay in Huntingdon township, one of the thirteen townships, and had been surveyed, valued, and certified to Connecticut claimants ; by reason whereof the Commonwealth became liable to pay to the plaintiff a just compensation for the premises : and being so liable, undertook to pay, See, Nevertheless, &c.
There is also an averment in the declaration, that the plaintiff had a right of suit or action against the Commonwealth, on, and long before the 3d March, 1812, and still hath the same right of action against the Commonwealth. It has been urged, that by reason of this averment, the plaintiff cannot recover, inasmuch as he deduces his title from the heirs of James Guest, by a deed dated 18th December, 1812; and therefore the allegata and probata do not agree. There would be force in this objection, if urged on the trial, on the production of the deed, and the subsequent part of the averment had been omitted. But here is a general averment of a subsisting right of action at the .time of bringing the suit: and if the same has been made out by his proofs, I think the former part of the averment may well be considered as surplusage and rejected.
The important question is, has the plaintiff shewn a legal right of action in himself?
*451 The Court below delivered their opinion to the jury, that at the time of the execution of the deed by the heirs at law of James Guest, to the plaintiff, they had no interest in the land, that would pass by their conveyance ; and that nothing did pass thereby; that this interest had been completely divested by the proceedings of the commissioners ; and that the right of action was not legally assignable. Hence it has been ■warmly contended, that the personal representatives of James Guest we re the proper parties to this suit, and that they alone could maintain an action against the Commonwealth.
To this conclusion, and these different propositions I cannot subscribe on the fullest reflection. Thé express words of the act of 3d March, 1812, are, “ that all and every Penn- “ sylvania claimant or claimants of lands, &c.” shall be at liberty to institute a suit, &c.- The executor or administrator of James Guest could only succeed to his rights, and be in no better situation than himself if in full life. If he had conveyed this land to the plaintiff for a full consideration, he could not, on any principle of law or common sense, be deemed the claimant. Could he, by any possibility shew upon the trial, that he was fully, fairly, and exclusively entitled to the land, except as to the certificate holders, after he had voluntarily transferred his interest to another ? And yet, with out such proof, he must fail in his suit! No law can be shewn, whereby the lands of the Pennsylvania claimants were transmuted into personalty, and made mere choses in action, by the act of the commissioners. It is true, the 9th section of the act of 6th April, 1802, directed, that those Pennsylvania. claimants who should refuse or neglect to release their lands to the Commonwealth, on, or before the 1st day of August then next, should not thereafter be entitled to recover the, land by any action against the Connecticut claimant, in whose favour a certificate should be granted by the commissioners; but such claimants should be at liberty to institute suits against the Commonwealth for just compensation; wherein they were to make it appear to the Court and jury, that they were fully, fairly, and exclusively entitled to such land, under this Commonwealth, except as against the certificate holder. Shutting the courts of justice by the state, against her own citizens deriving rights under her, was a strong measure, superinduced by the supposed exigency of the moment. The legislature, on grounds of policy, intended to throw difficult. *452 ties in the way of Pennsylvania claimants, hoping thereby to terminate the unhappy controversy from which great mischiefs had flowed ; but they meant to go no further. They were not unmindful of the decision in the Circuit Court of the United States, between the Lessee of Vanhorne and Dorrance, in 1795 ; nor could they have forgotten, that the constitution which they had been sworn to support, had declared in the close of the 10th section of the 9th article thereof, “ that no property should be taken or applied to public use, “ without just compensation being made.” Until the party receives the fair equivalent, the property must remain in him, upon principles of immutable justice. So far from the law of April, 1802, having the effect of completely divesting the interest of the Pennsylvania claimants in the lands, its terms convey a different idea. They must shew in their suits for compensation a full, fair, and exclusive title to the lands which they have refused or neglected to release. Be- . sides, if their title to the lands was taken away by that act, it was wholly unnecessary to declare, that they should not recover against the certificate holder. Without shewing title to the lands, they could not succeed in their ejectments.
- Arguments of a similar nature may fairly be urged under the words of the law of 3d March, 1812, against the conclusions drawn by the counsel for the Commonwealth. And my mind is fully satisfied on the whole matter, that the propositions stated in the charge of the Court were erroneous in point of law.
2. The last point is, ought the testimony of the value of the land on the 1st March, 1812, as offered by the plaintiff, to have been received ?
The words of the act authorising this suit are, “ at which trial the Court and jury shall have power, to award a just “ compensation, without taking into view any improvement “ made on the lands.” The improvements on the land at the time of trial must necessarily have been referred. to herein, and of course the then value of the land must be supposed ta have been contemplated by the legislature. I should, therefore, suppose, this to be a proper period at which the estimate should be made, unless where there has been unreasonable delay in commencing the action, or laches in not attempting to bring it to as early a decision as the usual business of the Court would admit. Such cases would form clear excep *453 lions to the application of the general rule: for no man should be permitted to take advantage of his own neglect, to the prejudice of another. Until the passing of the act. under consideration, no provision was made for those Pennsylvania claimants, whose titles had accrued subsequent to the decree of Trenton, and who had not released to the state: and the words of the act of 6th April, 1802, had interdicted the recovery of the lands from the certificate holder. Those certificated persons had paid their money upon the terms prescribed by the legislature; and upon no principle of distributive justice can it be asserted, that the value of the lands when the commissioners granted their certificates should form the measure of compensation. My mind revolts against an estimate grounded on such a system; believing it would form no proper basis for a just compensation.
I think the testimony offered ought to have been received; and that on both grounds the judgment below ought to be reversed, and a new trial awarded.
Judgment reversed, and a venire facias de novo awarded.